[No. 22849.    Department Two.    May 4, 1931.]

HARVEY F. DAVIS, *Appellant,* v. C. E. BLACKWELL & COMPANY *et al., Respondents.*[1]

*Sam R. Sumner* and *Harvey F. Davis,* for appellant.
*Peter McPherson,* for respondent.

BEELER, J.—For brevity, C. E. Blackwell & Co., a corporation, is referred to as "Blackwell," and Howard L. Dillon and June Dillon, his wife, as "Dillon."

February 3, 1930, Blackwell commenced an action to collect $92.72 in the justice court of Brewster precinct, Okanogan county, against Dillon, and on that date the justice of the peace appointed one Guy Jolly, in writ-

[1]Reported in 298 Pac. 730.

ing, as special constable to serve, and who did serve, a writ of attachment, and took into his possession an automobile, the property of Dillon. Shortly after the writ of attachment had been served, Dillon and wife executed and delivered to the special constable their affidavit, which, omitting the formal parts, follows:

"Howard L. Dillon and wife being first duly sworn on oath say: that in the case of *Blackwell v. Dillon,* they are the defendants, which action was commenced in the justice court of Brewster precinct, February 3, 1930, and in which action an attachment was issued. That defendants Dillon acknowledged the attachment and hereby recognize the legality and validity thereof, and by permission of the constable making said attachment and the plaintiff, are driving said car to Wenatchee, where defendants agree to obtain the amount of plaintiff's claim in the principal sum of $92.72, and costs, amounting to the sum of $8.50, in the full sum of $101.22, which defendants hereby agree, in consideration of being permitted to drive said car to Wenatchee, to remit to plaintiff at Okanogan, Washington, not later than Wednesday, February 5th, 1930; that the same will arrive in Okanogan not later than February 6, 1930. That the same is to be remitted by cashier's check, and in compliance therewith and the statements contained in this affidavit defendants and each of them hereby acknowledge under oath to fully comply with, and waive all claim for exemption, and consent that judgment be taken.

"Dated this 3d day of February, 1930."

Having signed the affidavit, Dillon drove to Wenatchee, Chelan county, but failed to pay the Blackwell indebtedness. From February 6 to March 3, certain proceedings occurred in the bankruptcy court at Wenatchee, but, since the referee by order revoked all such proceedings on March 3, no reference need be made thereto. On March 3, in the justice court, the parties by their counsel entered into the following stipulation, omitting formal parts:

"It is hereby agreed by and between plaintiffs (C. E. Blackwell & Co.) and the defendants (Howard L. Dillon and June Dillon, his wife) through their attorneys, Peter McPherson, attorney for plaintiff, and Harvey F. Davis, attorney for defendants, that heretofore a writ of attachment issued out of the above entitled court (justice court of Brewster precinct) in which a certain car belonging to defendants was attached by order of said court; and it is further agreed: That said car is now in the custody of the court. It is also stipulated and agreed between the parties that said car may be placed in the possession and custody of the sheriff of Chelan county, Washington, to remain in his possession until a final determination of said cause on appeal to the superior court in and for the state of Washington for Okanogan county, and until a final termination of said cause by said court, unless removed by stipulation and consent of both attorneys representing the parties hereto above named, and it is also agreed by the parties hereto that said car be turned over to the possession of said Chelan county sheriff this 3rd day of March, A. D. 1930, to remain as above mentioned.

"It is further stipulated and agreed that defendants may appeal this case from the justice court to the superior court of said Okanogan county, and that plaintiff will waive all jurisdiction of questions as to the time of such appeal, and further will not require an appeal bond from the defendants.

"Dated this 3rd day of March, 1930,
"Peter McPherson, Attorney for Plaintiff.
"Harvey F. Davis, Attorney for Defendants."

Pursuant to this stipulation, an appeal was taken to the superior court of Okanogan county, resulting in a judgment being entered April 12, for Blackwell. On April 18, 1930, a general execution was issued out of the superior court of Okanogan county and placed in the hands of the sheriff of Chelan county, who levied on the automobile as the property of Dillon, but, on that day, Harvey F. Davis, as plaintiff (appellant

here), made a third party claim to the automobile, and filed his bond and affidavit with the county clerk of Chelan county and with the sheriff of Chelan county, under the provisions of § 573, Rem. Comp. Stat., in which he alleged that Dillon and wife, on March 7, 1930, had conveyed the automobile to him by bill of sale, in consideration for his legal services, and which he had recorded with the county auditor of Chelan county.

The court found that the plaintiff had failed to establish title to the car and dismissed his claim, and ordered him either to return the car to the plaintiff or satisfy the Blackwell judgment, and entered judgment accordingly. From this judgment, the plaintiff has appealed.

This case from its inception is replete with irregularities. First, the justice of the peace before whom the action was commenced undertook to appoint a special constable to serve the writ of attachment issued therein. Next, the special constable, instead of taking manual possession of the attached property, surrendered it to Dillon and wife, and took, in lieu thereof, their affidavit, which constituted a written confession of judgment and a promise to make future payment. Thereafter, by written stipulation of the parties, the automobile was placed under the control of the sheriff of Chelan county. While the stipulation was in force, the appellant acquired title by bill of sale to the car from Dillon in payment of an attorney's fee.

The first question to be considered is whether the justice of the peace acquired jurisdiction over the automobile, the subject-matter of the controversy, by the writ of attachment. The power of a justice of the peace to appoint a special constable must be found in the statute, and, inasmuch as the power is subject to manifest abuse, in order for such appointment to be

legal the statute must be strictly, if not literally, complied with.

"The appointment by a justice of a person to act as constable must be in strict conformity with the statute, or the appointment is void, and the service of the process a nullity; and a defendant [the officer] who justifies under an alleged appointment, must affirmatively show that the causes authorizing the appointment existed, and that it was made in the manner prescribed by the statute. There is no presumption in his favor." *Cort v. Newman,* 6 Colo. App. 154, 40 Pac. 242.

See, also, *Cunningham v. Bostwick,* 7 Colo. 169, 43 Pac. 151.

Our statute which provides for the election of constables specifies their duties, defines their powers, and provides for the execution of bonds to secure the faithful discharge thereof. Sections 7555-7559, Rem. Comp. Stat. Concerning attachments, Rem. Comp. Stat., § 655, provides that writs of attachment shall be directed to the sheriff, and § 679 provides that the word "sheriff" applies to constables when the proceedings are in a justice court. The only authority for the appointment of a special constable is found in Rem. Comp. Stat., § 1764, which reads as follows:

"Any justice may, by appointment in writing, authorize any person other than the parties to the proceeding, or action, to serve any subpoena, summons, or notice and complaint issued by such justice: . . . Provided, it shall not be lawful for any justice to issue process or papers to any person not a regularly qualified sheriff or constable, in any precinct where such officers reside, unless from sickness or some other cause said sheriff or constable is not able to serve the same: . . ."

The record shows that the appointment of the special constable in the present case was in writing, and was made because of the need of haste, and not because of

sickness of the regularly qualified constable or some other similar cause. It is questionable whether this was a legal appointment, but, in view of the subsequent proceedings in the cause, this need not now be decided.

After the writ of attachment had been delivered to the special constable for service, he overtook the defendant, who was then driving his automobile, containing his family, to Wenatchee, Chelan county. Instead of taking manual possession of the automobile, the constable permitted Dillon and wife to retain the same and continue on their way to Wenatchee, after having acquired from them the affidavit above quoted.

It is elementary that continued possession of attached property is a prerequisite to the continuation of the lien. If the attaching officer relinquishes possession of the attached property, there is a termination of the attachment lien, and a defendant is then remitted to the property unencumbered, and may give good title to a subsequent purchaser for value. *In re Continental Transportation & Oil Co.,* 17 Fed. (2d) 434; *Gray v. Bracken,* 107 Conn. 300, 140 Atl. 354; *Stewart v. Stewart Drug Co.,* 117 Me. 84, 102 Atl. 823; *Saliba v. Mother M. Agnes,* 193 N. C. 251, 136 S. E. 706.

"Continued possession by the court is a like prerequisite to the continuity of the lien acquired through such proceedings. . . . Where the attaching officer, either before or after judgment, by direction of the plaintiff or otherwise, abandons the possession of the attached property, actually or constructively, the lien is dissolved." *In re Continental Transportation & Oil Co.,* 17 Fed. (2d) 434.

"It is of the very essence of a lien by attachment, that possession be taken and held; and when this is relinquished, there is a termination of the lien, and the general owner is remitted to his property unencumbered. . . . The plaintiff [the attaching officer], then, having abandoned the possession of the goods attached, the lien upon them was gone, and they were

out of the custody of the law, when taken and carried away by the defendant." *Taintor v. Williams,* 7 Conn. 271, 273.

In *Gray v. Bracken, supra,* the attaching officer, after attaching and taking possession of the debtor's goods, left them with him, taking a receipt in which the debtor and another agreed to re-deliver the goods to the officer on demand or pay the value thereof to him, and it was held that the attachment lien was lost and the property subject to attachment by other creditors, regardless of their knowledge of the prior attachment. The court in its opinion said:

"The contention of the plaintiff is that upon the facts stated the property attached by him in the first action against Quill was not subject to attachment by other creditors of Quill while in the latter's possession, after the plaintiff had surrendered the possession taken by him by virtue of his writ of attachment, and taken in its place an officer's receipt. This contention involves a misconception of the essential character of an attachment of personal property. . . . That possession be taken and held by the officer is in all cases indispensable, and when his possession is relinquished there is a termination of the attachment lien."

In this case, when the constable permitted Dillon to retain possession of the attached property, and took back an agreement to pay the judgment to be entered in the pending action in the justice court, the attachment lien was relinquished, and Dillon could give good title to the property to any subsequent purchaser for value.

After the release of the attached property, Dillon made an abortive attempt to have the same awarded to him as exempt by inaugurating proceedings in the Federal bankruptcy court. This move having failed of its purpose, all the parties interested entered into the stipulation of March 3, 1930 (above

quoted). The appellant, as attorney for Dillon, signed this stipulation and assisted in its preparation. By its terms, the automobile was turned over to the custody of the sheriff of Chelan county, to be held by him until the respective rights of the parties thereto had been finally adjudicated. It must be borne in mind that Blackwell had obtained his judgment against Dillon in the justice court on February 8, 1930. The stipulation not being entered into until March 3, 1930, more than twenty days had elapsed from the date of the judgment, and hence, the time for appeal had expired. On March 3, Blackwell could have levied execution on the automobile by reason of this judgment. He waived this right, he waived the necessity of an appeal bond. Entering into the stipulation was a matter of grace— a favor— a concession on his part.

It is manifest that the sense and purpose of the stipulation was that, in the event the judgment appealed from was affirmed, the automobile should be applied in payment thereof. This made the sheriff of Chelan county a mere pledgee. The superior court of Okanogan county so found on the appeal from the justice court, and this finding, we think, was correct. Whether the parties by stipulation could, after the time for taking an appeal had expired, confer jurisdiction on the superior court, need not be passed upon, for the reason that the original judgment in the justice court had never been reversed or set aside by appeal or otherwise.

Four days after the signing of the stipulation as attorney for Dillon, the appellant took from him a bill of sale of the automobile, which was then in the custody of the sheriff of Chelan county. By so doing, he acquired no greater rights thereto than Dillon himself possessed, and consequently, since it was the intent and purpose of the stipulation that the car should be

answerable to whatever judgment Blackwell might obtain, appellant is estopped from now claiming that respondent is not entitled to sell the car in order to satisfy his judgment. Furthermore, appellant was a party to the stipulation in question, his client had acquired the right to appeal without bond after the time had expired, and it would now be unconscionable to permit him to defeat his evident purpose.

The judgment appealed from must be affirmed. It is so ordered.

TOLMAN, C. J., BEALS, MILLARD, and FULLERTON, JJ., concur.